UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| HANOVER INSURANCE COMPANY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.: 2:19-cv-00567-DBP |
| | ) | |
| AMERICAN INTERNATIONAL SCHOOL OF UTAH, AMERICAN INTERNATIONAL SCHOOL, LLC, TASI YOUNG, and MICHAEL FARLEY, | ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Hanover Insurance Company ("Hanover"), files its Complaint for Declaratory Judgment against Defendants American International School of Utah ("AISU"), American International School, LLC ("AIS-LLC"), Tasi Young ("Young"), and Michael Farley ("Farley") (collectively, the "INSUREDS"), and alleges as follows:

### I. INTRODUCTION

1. This is an insurance coverage dispute between Hanover and the INSUREDS. AISU is a charter school in Murray, Utah, and AISU received federal and state grant monies to operate the school, including the payment of its teacher's salaries. On or about August 18, 2017, AISU received a "Notice of Concern" letter ("the Notice of Concern") from the Utah State Charter School Board ("USCSB"), which outlined certain deficiencies by AISU requiring corrective action. Subsequently, on or about December 28, 2018, AISU received a warning letter ("the Warning Letter") from the USCSB stating that AISU was "placed on Warning" due to, among other things, the "unresolved deficiencies" identified in the Notice of Concern, and that AISU needed to provide documentation and evidence of having "implement[ed] comprehensive

policies, procedures, and internal controls to ensure public education funds are accounted for, and are to be used only for items that are reasonable, necessary, and prudent."

2. On or about March 28, 2019, AISU received a letter from the Utah State Board of Education ("BOE") citing to federal law 2 C.F.R. 200.430, which governs "all *remuneration*" paid to school employees with public education funds, and that the BOE had "identified unallowable expenditures" paid to AISU employees with grant monies that needed to be repaid ("the BOE Demand Letter"). In total, the BOE Demand Letter seeks $514,905.99 in improper remuneration paid to AISU employees with federal grant monies. AISU has sought coverage for the repayment of this improper remuneration identified in the BOE Demand Letter under the School and Educators Legal Liability Coverage Part of a Commercial Line Policy issued by Hanover to AISU ("the Policy").

3. Thereafter, on July 26, 2019, the Utah Attorney General filed a lawsuit in Utah state court against the INSUREDS, seeking various injunctive remedies against the INSUREDS, and alleging, "the School [AISU] incurred debt to the State of Utah amounting to over $400,000 in state and federal restricted special education funds which the School improperly diverted to unrestricted expenses, and which it is obligated to reimburse" (the "Utah Lawsuit").

4. By letter dated July 31, 2019, from the Utah Attorney General, the INSUREDS were provided with a "Notice of Insurance Claim," which alleges misuse of federal and Utah funds by the INSUREDS, and alleging various improper acts, including "Accounting Services and Proper Documentation of Funds," "Use of restricted funds," "Management of State Funds," and "Use of restricted funds and other State Funds" (the "AG Demand").

- 2 -
2736639v.1

5. Pursuant to the language of the Policy, because the BOE Demand Letter, the Utah Lawsuit, and the AG Demand are all arising out of the same "educators wrongful act" or "wrongful act," they are all considered "one claim" under the Policy.

6. By letter dated May 28, 2019, Hanover denied that it had any duty to defend or indemnify AISU for the BOE Demand Letter. Specifically, the Policy contains a Remuneration Exclusion that bars coverage for "[a]ny 'claim' arising out of the insured obtaining or attempting to obtain *remuneration* or financial gain to which such insured was not legally entitled." Under federal law 2 C.F.R 200.430 governing "all remuneration" paid to public employees, the BOE Demand Letter alleges that AISU obtained grant monies from the BOE that were required to be used for only certain purposes, which AISU failed to do. Therefore, the BOE Demand Letter "arises out of" AISU obtaining "remuneration" or "financial gain" to which AISU was not legally entitled. Accordingly, the Policy does not afford coverage for the BOE Demand Letter (or the Utah Lawsuit, or the AG Demand), and Hanover has no duty to defend or to indemnify AISU and/or the INSUREDS for any obligation to repay $514,905.99 or any other monies for improper remuneration.

7. The Policy also does not afford coverage for the BOE Demand Letter, the Utah Lawsuit, and/or the AG Demand for several separate and independent reasons, including: (i) the restitution payments sought against the INSUREDS is for the repayment of grant monies used for improper remuneration, which does not constitute recoverable "loss" under the Policy; and (ii) the BOE Demand Letter, the Utah Lawsuit, and the AG Demand do not constitute a "claim" "first made" during the applicable 2018-2019 policy period, given that the earlier 2017 Notice of Concern from the USCSB arises, on information and belief, from the same "educators wrongful act" or "wrongful act," and was not timely provided to Hanover.

- 3 -

2736639v.1

8. By letter dated June 24, 2019, Hanover requested that AISU withdraw its tender for coverage for the BOE Demand Letter, and AISU has refused to do so.

9. An actual controversy exists between the INSUREDS and Hanover regarding Hanover's purported obligation to provide the INSUREDS with insurance coverage for the BOE Demand Letter, the Utah Lawsuit, and the AG Demand, and this controversy cannot be resolved without a declaration of the rights and responsibilities of the parties by this Court.

## II. **PARTIES**

10. Plaintiff Hanover is a company incorporated under the laws of Delaware with its principal place of business at 440 Lincoln Street, Worcester, Massachusetts.

11. On information and belief, Defendant AISU is a domestic non-profit corporation organized under the laws of Utah with its principal place of business at 36 S State Street, Suite 1900, Salt Lake City, Utah, 84111.

12. On information and belief, Defendant AIS-LLC is a limited liability company organized under the laws of Utah. On information and belief, AIS-LLC's membership consists of AISU, which owns approximately 70% of AIS-LLC, and certain individuals who are citizens of the People's Republic of China, who own the remainder of AIS-LLC and make up the rest of its membership.

13. On information and belief, Young is a citizen of Utah.

14. On information and belief, Farley is a citizen of Utah.

## III. **JURISDICTION AND VENUE**

15. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 respecting diversity jurisdiction insofar as it involves citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as the INSUREDS are alleged to owe in excess of $400,000 to federal and state agencies.
- 4 -
2736639v.1

16. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the relevant events occurred in this District, including the issuance of the Policy to AISU, and AISU does business and has a principal office within this District.

## IV. BACKGROUND FACTS

### A. The Hanover Policy

17. Hanover issued Commercial Line Policy ZH4 A352829 04 to AISU, which included a School and Educators Legal Liability ("SELL") Coverage Part, effective from August 1, 2018 to August 1, 2019 ("the Policy"), and AIS-LLC is named as an "Additional Named Insured" under the Policy. Young and Farley are both alleged "former Directors of AISU," and thereby are "insureds" under the Policy.

18. A true and correct copy of the Policy is attached as Exhibit 1.

19. The Policy provided the following insuring agreements under the SELL Coverage Part:

> **SECTION I – COVERAGES**
>
> **1. Insuring Agreements**
>
> **a. Coverage A – Educators Liability**
>
> We will pay, on behalf of the insured, those sums which the insured becomes legally obligated to pay as "loss" due to a "claim" arising out of an "educators wrongful act" to which this insurance applies.
>
> **b. Coverage B – Directors and Officers Liability**
>
> **(1) Individual Liability**
>
> We will pay on behalf of each "insured individual" all "loss" which the "insured individual" becomes legally obligated to pay due to a "claim" arising out of a "wrongful act" to which this insurance applies.
>
> **(2) Entity Liability**

- 5 -

> We will pay on behalf of the "insured entity" all "loss" which the "insured entity" is legally obligated to pay due to a "claim" arising out of a "wrongful act" to which this insurance applies.

20. The Policy, as modified by endorsement, provides the following definition of "Claim":

> "Claim" means:
> **a.** A written demand for monetary damages, or injunctive or other non-monetary relief; or
> **b.** A "suit" against an insured for an "educators wrongful act" or "wrongful act" to which this insurance applies.

21. The Policy provides the following definition of "Loss":

> "Loss" means a compensatory monetary award, settlement or judgment that the Insured is legally obligated to pay, including costs and attorney's fees awarded pursuant to a judgment.
>
> However, "Loss" does not include:
>
> **a.** Any sum awarded for punitive damages, exemplary damages, multiplied damages, taxes, fines or penalties imposed by law;
> **b.** The cost of compliance with injunctive or other non-monetary relief;
> **c.** The value of tuition and fees paid to you, including fees for room, board, laboratories and other similar fees;
> **d.** The value of scholarships granted by you or from other sources.

22. The Policy provides the following definition of "Wrongful act":

> "Wrongful act" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duty by an insured while acting in the scope of their duties for the Named Insured, or by an insured acting in an "Outside Capacity", or any matter claimed against the insured solely by reason of their serving as a director or officer for the Named Insured.

23. The SELL section of the Policy contains a Remuneration Exclusion at Section 6.b., which provides:

This insurance does not apply to: …

**b.** **Illegal Financial Gain**

Any "claim" arising out of the insured obtaining or attempting to obtain remuneration or financial gain to which such insured was not legally entitled.

24. The Policy is a "claims-made" policy. The SELL Section of the Policy expressly provides:

**CLAIMS-MADE WARNING**

**THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO "CLAIMS" FIRST MADE AGAINST YOU DURING THE "POLICY PERIOD"….**

25. The SELL section of the Policy provides as follows at Section 2.d.:

**2.** **When this Insurance Applies**

This insurance applies to an "educators wrongful act" or a "wrongful act" which occurs anywhere in the "coverage territory" but only if: …

**d.** A "claim" because of an "educators wrongful act" or a "wrongful act" is first made against any insured, in accordance with paragraph e. below, during the "policy period"….

The SELL section of the Policy provides as follows at Section 2.f.:

**2.** **When this Insurance Applies**

This insurance applies to an "educators wrongful act" or a "wrongful act" which occurs anywhere in the "coverage territory" but only if: …

**f.** Two or more "claims" arising out of a single "educators wrongful act" or a single "wrongful act" or a series of "educator wrongful acts" or a series of "wrongful acts" related in any way to each other shall be considered one "claim". Any such "claims"

whenever made shall be considered as first made at the time the first of those "claims" was made.

26. Section 3. of the SELL section of the Policy provides as follows, in pertinent part:

**a.** We will have the right and duty to defend the insured against any "claim" alleging an "educators wrongful act" or a "wrongful act" to which this insurance applies. …

**e.** We will have no duty to defend any insured against any "claim" to which this Coverage Part does not apply. …

**f.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under this Coverage Part.

**B.    The "Claims" Against AISU**

27. On information and belief, on or about August 18, 2017, AISU received the Notice of Concern letter from the USCSB, which made demands that AISU remedy certain deficiencies.

28. On information and belief, the Notice of Concern letter was a demand for non-monetary relief from AISU.

29. On or about December 28, 2018, AISU received the Warning Letter, issued pursuant to U.C.A. § 53G-5-501 by the USCSB.

30. A true and correct copy of the Warning Letter is attached as Exhibit 2.

31. The Warning Letter stated that as of December 13, 2018, AISU was "placed on Warning," and was required to take specific corrective actions to remedy certain enumerated deficiencies in AISU's policies, procedures, and internal controls. The Warning Letter noted that the deficiencies included "remaining unresolved deficiencies" from the Notice of Concern issued August 18, 2017. The Warning Letter demanded that AISU provide documentation and evidence

of implementing certain policies, procedures, and internal controls "to ensure public education funds are accounted for, and are to be used only for items that are reasonable, necessary, and prudent."

32. On or about March 28, 2019, AISU received the BOE Demand Letter.

33. A true and correct copy of the BOE Demand Letter is attached as Exhibit 3.

34. Through the BOE Demand Letter, the BOE stated that it had performed a review of AISU's activities and expenditures to ensure that expenditures are used for authorized purposes, in compliance with Federal laws and regulations, pursuant to 2 C.F.R. 200.430. The BOE further states that based on its review of AISU's expenditures for Fiscal Years 2016, 2017, and 2018, the review had "identified unallowable expenditures and includes a calculation outlining the amount that needs to be repaid to USBE. The total repayment amount, including interest is $514,905.99."

35. Specifically, the BOE Demand Letter made numerous findings, including the following: "[b]ased on our review of accounting records, it appears that American International School of Utah has incorrectly allocated $8,464.53 of State Special Education funds to pay for _unsupported teacher salaries and benefits_"; and "[b]ased on our review of accounting records, it appears that American International School of Utah has incorrectly allocated $157,216.89 of IDEA Special Education funds to pay for _unallowable health insurance premiums and salaries and benefits of teachers_"; and "[b]ased on our review of accounting records, it appears that American International School of Utah has incorrectly allocated $154,197.44 of State Special Education funds to pay for _unsupported salaries and benefits of school administrators, teachers, social workers and health insurance premiums_"; and "[b]ased on our review of accounting records, it appears that American International School of Utah has incorrectly allocated

$178,545.10 of State Special Education funds to pay for *unsupported salaries and benefits of school administrators and teachers*." (Emphasis added.)

36. On or about July 26, 2019, the Utah Attorney General filed the Utah Lawsuit against the INSUREDS, seeking various injunctive remedies against the INSUREDS, and alleging, "the School [AISU] incurred debt to the State of Utah amounting to over $400,000 in state and federal restricted special education funds which the School improperly diverted to unrestricted expenses, and which it is obligated to reimburse."

37. A true and correct copy of the Utah Lawsuit is attached as Exhibit 4.

38. On July 31, 2019, the Utah Attorney General sent the AG Demand to the INSUREDS, providing them with a "Notice of Insurance Claim," which alleges misuse of federal and Utah funds by the INSUREDS, as well as various improper acts, including "Accounting Services and Proper Documentation of Funds," "Use of restricted funds," "Management of State Funds," and "Use of restricted funds and other State Funds" (the "AG Demand").

39. A true and correct copy of the AG Demand is attached as Exhibit 5.

**C.** **AISU Provides Notice of the Utah Matters to Hanover**

40. On or about May 6, 2019, AISU, through its broker, provided Hanover with "notice of a potential claim" involving AISU and, thereafter, on or about May 22, 2019, AISU provided Hanover with notice of the BOE Demand Letter.

41. Prior to that time, AISU had not provided notice of the earlier August 18, 2017 Notice of Concern letter or the December 28, 2018 Warning Letter.

42. By letter dated May 28, 2019, Hanover denied that it had any duty to defend or indemnify AISU. Hanover reiterated its coverage position through two subsequent letters dated June 24, 2019.

43. In its June 24, 2019 letters to AISU, Hanover also requested that AISU withdraw its tender for coverage so that Hanover would not have to file a declaratory judgment lawsuit against AISU, and AISU has refused to do so.

44. On or about July 27, 2019, the INSUREDS, through their broker, provided Hanover with notice of the Utah Lawsuit.

45. On or about July 31, 2019, the INSUREDS, through their broker, provided Hanover with notice of the AG Demand.

**D.    Application of the Policy Terms and Exclusions**

   *1.    The Remuneration Exclusion*

46. Through the Remuneration Exclusion, the Policy specifically excludes claims arising out of the insured obtaining or attempting to obtain remuneration or financial gain to which such insured was not legally entitled.

47. The BOE Demand Letter, the Utah Lawsuit, and the AG Demand all allege that AISU obtained grant monies that were required to be used for certain purposes, which AISU failed to do.

48. Therefore, the BOE Demand Letter, the Utah Lawsuit, and the AG Demand all "arises out of" the INSUREDS and/or its employees obtaining "remuneration" or "financial gain" to which the INSUREDS and/or its employees were not legally entitled.

49. Accordingly, there is no coverage for the BOE Demand Letter, the Utah Lawsuit, and the AG Demand, and no duty for Hanover to defend or indemnify any of the INSUREDS for

the BOE Demand Letter, the Utah Lawsuit, and the AG Demand under the Policy pursuant to the Remuneration Exclusion.

### 2. *The Utah Matters do not seek payment of a covered "loss"*

50. The SELL Coverage provided in the Policy provides that Hanover will pay, on behalf of AISU, those sums which AISU becomes legally obligated to pay as "loss" due to a "claim" arising out of a "wrongful act" or an "educators wrongful act" to which this insurance applies.

51. The Policy defines "loss" as "a compensatory monetary award, settlement or judgment that the Insured is legally obligated to pay, including costs and attorney's fees awarded pursuant to a judgment."

52. The restitution payments sought from the INSUREDS are for the repayment of grant monies used for improper remuneration, which does not constitute recoverable "loss" under the Policy.

53. Accordingly, there is no coverage under the Policy for the BOE Demand Letter, the Utah Lawsuit, and the AG Demand and, therefore, Hanover has no duty to defend or indemnify AISU for the BOE Demand Letter, the Utah Lawsuit, and the AG Demand under the Policy.

### 3. *The Utah Matters are not a "claim" "first made" during the Policy Period*

54. The Policy provides coverage on a claims-made basis, and only applies to "claims" first made against the insured during the policy period.

55. Specifically, the Policy provides coverage to any "educators wrongful act" or any "wrongful act," but only if the "claim" because of such wrongful act is first made during the policy period.

56. The Policy further provides that "Two or more 'claims' arising out of a single 'educators wrongful act' or a single 'wrongful act' or a series of 'educator wrongful acts' or a series of 'wrongful acts' related in any way to each other shall be considered one 'claim'. Any such 'claims' whenever made shall be considered as first made at the time the first of those 'claims' was made."

57. The BOE Demand Letter, the Utah Lawsuit, and the AG Demand all arise from the same related series of alleged "wrongful acts" or "educator wrongful acts" as the earlier 2017 Notice of Concern, which also constitutes a "claim." Under the Policy, the BOE Demand Letter, the Utah Lawsuit, and the AG Demand and the 2017 Notice of Concern are considered a single "claim" that was first made at the time of the earlier 2017 Notice of Concern.

58. AISU failed to provide proper notice of the 2017 Notice of Concern to Hanover during the applicable (earlier) policy period. Therefore, the BOE Demand Letter, the Utah Lawsuit, and the AG Demand do not constitute a "claim" "first made" during the 2018-2019 policy period applicable to the Policy.

59. Accordingly, there is no coverage under the Policy for the BOE Demand Letter, the Utah Lawsuit, and the AG Demand and, therefore, Hanover has no duty to defend or indemnify the INSUREDS for the BOE Demand Letter under the Policy.

**COUNT I – Declaratory Judgment Regarding Hanover's Duty to Defend**

60. Hanover incorporates and restates each and every foregoing allegation as if fully set forth herein.

61. Based upon any or all of the terms and exclusions of the Policy identified herein, Hanover has no duty to defend the INSUREDS from the allegations made in the BOE Demand Letter, the Utah Lawsuit, and the AG Demand.

WHEREFORE, Hanover respectfully requests that this Court enter judgment in Hanover's favor and against AISU, declaring that Policy provisions preclude coverage for the BOE Demand Letter, the Utah Lawsuit, and the AG Demand, and that Hanover has no duty to defend AISU from the allegations made in the BOE Demand Letter, the Utah Lawsuit, and the AG Demand, and that this Court to grant Hanover such other and further relief as this Court deems just and equitable under the circumstances.

### COUNT II – Declaratory Judgment Regarding Hanover's Duty to Indemnify

62. Hanover incorporates and restates each and every foregoing allegation as if fully set forth herein.

63. Based upon any or all of the terms and exclusions of the Policy identified herein, Hanover has no duty to indemnify the INSUREDS from the money demanded in the BOE Demand Letter, the Utah Lawsuit, and the AG Demand.

WHEREFORE, Hanover respectfully requests that this Court enter judgment in Hanover's favor and against the INSUREDS, declaring that Policy provisions preclude coverage for the BOE Demand Letter, the Utah Lawsuit, and the AG Demand, that Hanover has no duty to indemnify the INSUREDS for any "loss" related to the BOE Demand Letter, the Utah Lawsuit, and the AG Demand, and that this Court to grant Hanover such other and further relief as this Court deems just and equitable under the circumstances.

August 13, 2019                                    Respectfully submitted,

                                          HANOVER INSURANCE COMPANY

                                      By: */s/* Scott Sweeney
                                          Scott Sweeney, Esq.
                                          Utah State Bar No.: 15070
                                          WILSON ELSER MOSKOWITZ
                                           EDELMAN & DICKER LLP

1225 17th Street, Suite 2750
Denver, CO 80202
(303) 572-5324
Email: Scott.Sweeney@wilsonelser.com